UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKI CROUCH,

        Plaintiff,

v.

COBALT FINANCIAL GROUP, LLC,
MIGUEL JOSEPH GUZMAN,
MARCO D. MCKITHEN,
AHARON BINYAMINOV,
ZION BINYAMINOV,
YESYA MOSHEYEVA,
MORDECHAY SHAHAK,
SECURED BILLING SERVICES, LLC,
RONALD C. SERIO,
HYLAN ASSET MANAGEMENT, LLC,
HYLAN DEBT FUND, LLC and
ANDREW J. SHAEVEL,

        Defendants.

_____/

## COMPLAINT

**I.**     **Introduction**

    1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

    2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

1

representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as many other entities located in and around Miami Florida, Atlanta, Georgia, Buffalo, New York, and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed. Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of

limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.    The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.    On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015.

5. Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

## II. Jurisdiction

6. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## III. Parties

7. Plaintiff Jacki Crouch is an adult, natural person residing in Kent County, Michigan. Ms. Crouch is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Crouch is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8. Defendant Cobalt Financial Group, LLC ("CFG"), also doing business under the unregistered names "CFG" and "Asset Recovery Division," is an active Florida limited liability company, with Articles of Organization filed November 9, 2016 and Articles of Amendment to Articles of Organization filed December 19, 2016. CFG supposedly does business at 1100 Park Central Boulevard South, Suite 2450, Pompano Beach, Florida 33064. A copy of the lease and

4

related documents will need to be obtained from the lessor in discovery to determine all parties and guarantors that are subject to the lease of the suite. The registered agent for CFG is Pollack, Pollack & Kogan LLC, 44 West Flagler Street, Suite 2050, Miami, Florida 33130. The Managing Members of CFG are Aharon Binyaminov, Zion Binyaminov, and Yesya Mosheyeva. CFG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CFG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CFG is a "debt collector" as the term is defined and used in the FDCPA. CFG is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, CFG is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

9. CFG maintains an internet domain, www.cobaltfg.com, which was registered on December 12, 2016, through GoDaddy.com, LLC, by defendant Mordechay Shahak. The CFG domain links to a website, which vaguely states that CFG offers "asset management solutions." Defendants use the CFG domain to communicate by email with consumers, and among themselves. One such email address used by defendants is info@cobaltfgllc.com. The subscriber and billing information, as well as all emails addresses associated with the domain, will need to be obtained from GoDaddy.com, LLC in discovery.

10. CFG and its employees and agents use multiple telephone numbers when conducting their unlawful debt collection operation, including 800-563-4062 and 800-564-9895. The Responsible Organization for both numbers is Level 3 Communications, LLC. The subscriber and billing information for the numbers will need to be obtained from Level 3 Communications, LLC, and the entity that provides end-use telephony service to defendants, in discovery.

5

11.     CFG and its employees and agents use multiple aliases when communicating with consumers, including: Amy Johnson, Michael Moore, Angela Davis, Rachael Jennings, Betsy Castro, Vanessa Ortiz, Jordan Scott, and Mr. Pritchard.

12.     CFG directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

13.     Defendant Miguel Joseph Guzman, also known as Joseph Guzman, also known as Miggz Guzman, age 31, is a natural person, purportedly residing at 7311 NW 17th Court, Hollywood, Florida 33024-1001. Mr. Guzman previously resided at 95 Helen Avenue, Apartment 1, Buffalo, New York 14219-1617. Mr. Guzman is an owner, officer, manager, employee and/or agent of CFG. Mr. Guzman sometimes uses the email address guzman.miguel85@gmail.com to conduct his unlawful debt collection scam. Mr. Guzman uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Guzman regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Guzman is a "debt collector" as the term is defined and used in the FDCPA. Mr. Guzman is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Guzman is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

14.     Mr. Guzman is a convicted felon and drug trafficker. See *United States of America v. Miguel Guzman,* United States District Court, Western District of New York (Buffalo), Case No. 1:11-cv-00345-RJA-1. On April 2, 2012, Mr. Guzman was sentenced to three years of probation, including substance abuse testing/treatment. On May 10, 2012, Mr. Guzman was arrested in the City of Buffalo for Disorderly Conduct and Drinking to Excess. On May 15, 2012, the court modified Mr. Guzman's sentence, imposing a three-month curfew

prohibiting Mr. Guzman from entering any bar, club or casino, ordering Mr. Guzman to abstain from consuming alcohol, and ordering Mr. Guzman to wear a tether for electronic monitoring. Despite the foregoing, on May 31, 2012, Mr. Guzman's probation officer observed Mr. Guzman consuming alcohol at Mickey Rats bar in Angola, New York. On June 8, 2012, the court again modified Mr. Guzman's sentence, ordering Mr. Guzman to home detention and under tether for the remainder of his three-month curfew.

15. Mr. Guzman while residing in Buffalo, New York was the managing member of a collection agency named Northeast Receivables Management, LLC, a New York limited liability company, formed on or about October 3, 2014. The internet website for the Better Business Bureau for Upstate New York contains numerous consumer complaints regarding Mr. Guzman and his company, detailing the same unlawful debt collection tactics that are described in this complaint. The BBB, on a scale of A to F, gives Mr. Guzman and his company a rating of "F."

16. Mr. Guzman previously was employed as a debt collector for an entity named Audubon Financial Bureau, LLC ("Audubon"). On March 19, 2013, a lawsuit was filed against Audubon, Mr. Guzman, and others, alleging that the defendants had engaged in the same unlawful debt collection tactics that are described in this complaint. See *Sweet et al. v. Audubon Financial Bureau, LLC et al.,* United States District Court, District of New Mexico, Case No. 1:13-cv-00258-BRB-WPL.

17. Mr. Guzman (a) created the collection policies and procedures used by CFG and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CFG, (c) oversaw the application of the collection policies and procedures used by CFG and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CFG and its employees

and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CFG and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CFG and its employees and agents in attempts to collect an alleged debt from Ms. Crouch as alleged in this complaint.

18. Mr. Guzman directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

19. Defendant Marco D. McKithen is a natural person, age 30, purportedly residing at 2760 NW 15th Court, Fort Lauderdale, Florida 33311-5160. Mr. McKithen previously resided in and around Buffalo, New York. Mr. McKithen is an owner, officer, manager, employee and/or agent of CFG. Mr. McKithen sometimes uses the email address marco.mckithen@gmail.com and the telephone number 716-313-6005 to conduct his unlawful debt collection scam. Mr. McKithen uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McKithen regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. McKithen is a "debt collector" as the term is defined and used in the FDCPA. Mr. McKithen is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. McKithen is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

20. Mr. McKithen claims (when he is not busy running his debt collection scam) to be a member of the United States Navy Reserve.

21.     Mr. McKithen claims that when he was residing in Buffalo, New York, he was the "Chief Operating Officer" for a collection agency named Northeast Receivables Management, LLC, a New York limited liability company, formed on or about October 3, 2014.  The internet website for the Better Business Bureau for Upstate New York contains numerous consumer complaints regarding the company, detailing the same unlawful debt collection tactics that are described in this complaint. The BBB, on a scale of A to F, gives the company a rating of "F."

22.     Mr. McKithen is an owner, officer and employee of Mpire Receivables Management LLC, a Florida limited liability company, formed on or about March 30, 2015. According to the State of Florida, the company is inactive for failure to file required documents.

23.     In December of 2016, Mr. McKithen ran an advertisement on the internet website, www.uk.jobs68.com, stating: "Looking for full-time IT Technician. Must have experience in setting up call centers and large offices. We are looking to grow a massive company at our Pompano Beach location. Competitive pay for full or part-time positions. I am scheduling interviews for immediate hire. Please send resumé to Marco.McKithen@gmail.com and contact me at 716-313-6005."

24.     Mr. McKithen (a) created the collection policies and procedures used by CFG and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CFG, (c) oversaw the application of the collection policies and procedures used by CFG and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CFG and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Crouch as alleged in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by CFG and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CFG and its employees and agents in attempts to collect an alleged debt from Ms. Crouch as alleged in this complaint.

25. Mr. McKithen directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

26. Defendant Aharon Binyaminov is a natural person, purportedly residing at 3029 NE 188th Street, Apt. 517, Miami, Florida 33180. Mr. Binyaminov is an owner, officer, managing member, manager, employee and/or agent of CFG. Mr. Binyaminov uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Binyaminov regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Binyaminov is a "debt collector" as the term is defined and used in the FDCPA. Mr. Binyaminov is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Binyaminov is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

27. Aharon Binyaminov (a) created the collection policies and procedures used by CFG and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CFG, (c) oversaw the application of the collection policies and procedures used by CFG and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CFG and its employees and agents to collect debts from consumers, including the tactics and scripts that were

used to attempt to collect an alleged debt from Ms. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CFG and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CFG and its employees and agents in attempts to collect an alleged debt from Ms. Crouch as alleged in this complaint.

28.     Aharon Binyaminov directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

29.     Defendant Zion Binyaminov is a natural person, purportedly residing at 3029 NE 188th Street, Apt. 517, Miami, Florida 33180. Mr. Binyaminov is an owner, officer, managing member, manager, employee and/or agent of CFG. Mr. Binyaminov uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Binyaminov regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Binyaminov is a "debt collector" as the term is defined and used in the FDCPA. Mr. Binyaminov is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Binyaminov is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

30.     Zion Binyaminov (a) created the collection policies and procedures used by CFG and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CFG, (c) oversaw the application of the collection policies and procedures used by CFG and its employees and agents,

11

(d) drafted, created, approved and ratified the tactics and scripts used by CFG and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CFG and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CFG and its employees and agents in attempts to collect an alleged debt from Ms. Crouch as alleged in this complaint.

31.     Zion Binyaminov directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

32.     Non-party Baronfin, Inc. is a Florida corporation, formed on or about October 3, 2016. The company's President and registered agent is Aharon Binyaminov. The company's Director is Zion Binyaminov. The company supposedly is located at 3029 NE 188th Street, Apt. 517, Miami, Florida 33180.  It will need to be determined in discovery whether Baronfin, Inc. is a participant in the unlawful debt collection practices that are described in this complaint.

33.     Defendant Yesya Mosheyeva is a natural person, purportedly residing at 6307 Booth Street, Rego Park, New York 11374-2019. Mr. Mosheyeva is an owner, officer, managing member, manager, employee and/or agent of CFG. Mr. Mosheyeva uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Mosheyeva regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Mosheyeva is a "debt collector" as the term is defined and used in the

FDCPA. Mr. Mosheyeva is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Mosheyeva is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

34.     Mr. Mosheyeva (a) created the collection policies and procedures used by CFG and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of CFG, (c) oversaw the application of the collection policies and procedures used by CFG and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CFG and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by CFG and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CFG and its employees and agents in attempts to collect an alleged debt from Ms. Crouch as alleged in this complaint.

35.     Mr. Mosheyeva directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

36.     Defendant Mordechay Shahak is a natural person, age 46, purportedly residing at 10557 Galleria Street, Wellington, Florida 33414-3159, or perhaps 2531 Country Golf Drive, Wellington, Florida 33414-8323.  Mr. Shahak is an owner, officer, managing member, manager, employee and/or agent of CFG. Mr. Shahak uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Shahak regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. Mr. Shahak is a "debt collector" as the term is defined and used in the FDCPA. Mr.

Shahak is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr.

Shahak is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

37.     According to the records of Palm Beach County, Florida, available on the internet,

with related mug shots, Mr. Shahak was arrested and booked in Palm Bach County on March 31,

2016 and again on January 13, 2017.

38.     Mr. Shahak registered the internet domain name for CFG.

39.     Mr. Shahak directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

40.     Non-party MBG Financial Corp ("MBG") is a Florida corporation, formed on or

about September 27, 2016. MBG claims to be doing business at 6442 NW 5th Way, Fort

Lauderdale, Florida 33309. The registered agent for MBG is Edi Gurlovsky, 3029 NE 188th

Street, Apartment 517, Miami, Florida 33180, which is the supposed business address by

defendants Aharon Binyaminov and Zion Binyaminov for non-party Baronfin, Inc.  Mr.

Gurlovsky is an owner, officer and manager of MBG. On January 6, 2017, Mr. Gurlovsky

registered a domain name for MBG (www.mbgf.us), which is linked to a website stating that

MBG collects and processes payments for past-due debt. In 2017, MBG has run multiple

advertisements on the internet, "looking for a Debt Collector to join our team." The internet

contains numerous consumer complaints about MBG, describing the same unlawful debt

collection tactics that are described in this complaint. It will need to be determined in discovery

whether MBG and Mr. Gurlovsky are participants in the unlawful debt collection practices that

are described in this complaint.

41.     Defendant Secured Billing Services, LLC ("SBS") is an active New York limited liability company, formed on or about November 5, 2014, and purportedly doing business at 210 John Glenn Drive, Suite 10, Amherst, New York 14228. SBS is owned and operated by defendant Ronald C. Serio. SBS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SBS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SBS is a "debt collector" as the term is defined and used in the FDCPA. SBS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, SBS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

42.     SBS maintains an internet domain, www.securedbillingservices.org, which was registered on November 15, 2016 by defendant Ronald C. Serio, 697 LeBrun Road, Buffalo, New York 14226-4222, with telephone number 716-253-6516. The telephone number also has been used in advertisements placed on the internet, seeking employees to work as debt collectors.

43.     SBS directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

44.     Defendant Ronald C. Serio, age 40, is a natural person, purportedly residing at 697 LeBrun Road, Buffalo, New York 14226-4222. Mr. Serio is an owner, officer, manager, employee and agent of SBS. Mr. Serio Uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Serio regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Serio is a "debt collector" as the term is defined and used in the FDCPA. Mr. Serio is a "regulated

person" as the term is defined and used in the MRCPA. Alternatively, Mr. Serio is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

45. Mr. Serio (a) created the collection policies and procedures used by SBS and CFG and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of SBS, (c) oversaw the application of the collection policies and procedures used by SBS and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by SBS and CFG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SBS and CFG and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SBS and CFG and their employees and agents in attempts to collect an alleged debt from Ms. Crouch as alleged in this complaint.

46. Mr. Serio directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Crouch that are described in this complaint.

47. Mr. Guzman maintains at least three internet profiles on www.facebook.com, located as follows: www.facebook.com/RealMiggz, www.facebook.com/migueljoseph.9081, and www.facebook.com/miggzg. Mr. Guzman has posted multiple photographs on facebook related to his unlawful debt collection operation, including the following:

    a)      On October 30, 2016, Mr. Guzman posted a photograph of a meeting related to the planning of defendants' collection operation, with the

caption: "I'd rather discuss the future any day than to party." See Exhibit A.

b)   On December 5, 2016, Mr. Guzman posted a photograph of a meeting between himself, Aharon Binyaminov and Edi Gurlovsky, with the caption: "Build an Empire from loyalty with Kings." See Exhibit B.

c)   On December 27, 2016, Mr. Guzman posted a photograph of collection desks for defendants' collection operation, with the caption: "Looking for 2 more employees apply within. Competitive pay $13-15hr w/experience to start. Inbox me." See Exhibit C.

49.   Defendant Aharon Binyaminov also maintains at least one internet profile on www.facebook.com, located at www.facebook.com/Aharon.Binyaminov. Mr. Binyaminov has posted multiple photographs on facebook related to his unlawful debt collection operation, including multiple photographs posted on January 5, 2017 of Mr. Binyaminov, Mr. Guzman, Mr. McKithen and other yet-to-be identified persons, on the collection floor, with the caption: "We are open!!!" See Exhibit D.

50.   Defendant Hylan Asset Management, LLC ("HAM") is a New York limited liability company, purportedly doing business at 350 Essjay Road, Suite 304, Amherst, New York 14221.  HAM may also be doing business at 5477 Main Street, Amherst, New York 14221. HAM is a member of ACA International, a debt collector trade group.  HAM is owned, operated and managed by defendant Andrew J. Shaevel and others, to be identified in discovery.  HAM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  HAM regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another.  HAM is a "debt collector" as the term is

defined and used in the FDCPA.  HAM is a "regulated person" as the term is defined and used in

MRCPA.  Alternatively, HAM is a "collection agency" and "licensee" as the terms are defined

and used in MOC.

50.     HAM directly and indirectly participated in the unlawful debt collection practices

to collect an alleged debt from Ms. Couch that are described in this complaint.

51.     HAM has maintained an internet website (www.hylanassetc.com), which stated in

pertinent part:

a)      HAM is a "boutique portfolio management firm that specializes in
        assisting investors to acquire, manage and remarket portfolios of distressed
        consumer receivables as an alternative investment."

b)      "Weekly Management – Active management of the liquidation process
        provides clients with weekly cash flow, financial reports and updates on
        portfolio performance. . . ."

c)      "[W]e manage our agencies as valued partners, and vigorously promote
        ethical and respectful interactions with all consumers."

d)      "Our service expectations and values are taught as well as enforced
        through our network of collection agencies and law firms. . . . As a larger
        debt buyer, we attempt to negotiate pricing and forward flow arrangements
        directly from originators and accredited debt sellers."

e)      "The Private Banking Team at Key Bank assists Hylan each week to
        aggregate payments from our network of collection agencies and to

disburse net proceeds to our clients.  Many of Hylan's clients also have accounts at Key Bank, or are the beneficiary of an escrow account held for their benefit at Key Bank."

f)       "Hylan is solely an advisory and portfolio management services firm that assists clients to acquire, liquidate and dispose of pools of distressed consumer receivables ("portfolios")."

g)       "In most cases, Hylan assigns the title of the debt into the name of the client, although in some instances, Hylan retains ownership of a portfolio and issues a participated economic interest in the portfolio as an alternative structure."

h)       "Hylan has developed a robust network of trusted collection agencies who provide ethical and professional collection services that adhere to Hylan's strict expectations.  Once Hylan has secured a portfolio, it selects collection agencies and law firms based on historical track record and due diligence to ensure that each portfolio will be professionally serviced. Hylan generally distributes portfolios to multiple agencies to further ensure diversification and encourage a healthy dose of competitive spirit. Our Portfolio Managers keep their hands on the pulse of each portfolio, and as a result, secures weekly reports for each agency. . . .  If a portfolio is underperforming, we will communicate with the agency and, if necessary, will rotate the portfolio to another agency."

i)       "While Hylan does not collect on consumer debt we actively monitor the

practices of receivables management firms/agencies that we have selected to service Hylan's debt portfolios."

52.     Defendant Hylan Debt Fund, LLC ("HDF") is a Delaware limited liability company, purportedly doing business at 350 Essjay Road, Suite 304, Amherst, New York 14221. HDF may also be doing business at 5477 Main Street, Amherst, New York 14221. HDF is owned, operated and managed by defendants Andrew J. Shaevel and others, to be identified in discovery. HDF uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. HDF regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. HDF is a "debt collector" as the term is defined and used in the FDCPA. HDF is a "regulated person" as the term is defined and used in MRCPA. Alternatively, HDF is a "collection agency" and "licensee" as the terms are defined and used in MOC.

53.     HDF directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Couch that are described in this complaint.

54.     Between December 23, 2013 and April 10, 2015, defendant Andrew J. Shaevel filed 109 Notices of Exempt Offering of Securities, Form D, with the United States Securities and Exchange Commission, for the Hylan Debt Fund, LLC, Portfolio Series 1 through 47 and 49 through 110, disclosing Andrew J. Shaevel and Jon E. Purizhansky as Executive Officers of HDF and disclosing Hylan Asset Management, LLC as a director of HDF. The names of the investors and the extent to which the investors had knowledge of the debt collection tactics employed by Mr. Shaevel, Mr. Purizhansky, HAM, HDF and the third party debt collectors with whom the accounts are placed for collection or sold, will be determined in discovery.

55.     Defendant Andrew J. Shaevel used the money raised from investors in the above-described exempt offerings of securities to purchase delinquent payday loans in the name of HDF, and then managed the collection of those accounts through HAM, by placing the accounts for collection with its "robust network of trusted collection agencies" or by eventually selling the accounts to other entities.

56.     Defendant Andrew J. Shaevel is a natural person, purportedly residing at 19 Prince of Wales Court, Buffalo, New York, 14221.  Mr. Shaevel is an owner, officer, managing member and employee of HAM and HDF.  Mr. Shaevel purports to be  a "seasoned financial services industry executive with vast experience in the receivable services."  According to information provided to ACA International, Mr. Shaevel is the Chairman and Ethics Contact at HAM.  Mr. Shaevel uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Shaevel regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Shaevel is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Shaevel is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Shaevel is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

57.     Mr. Shaevel (a) created the collection policies and procedures used by HAM and HDF, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of HAM and HDF, (c) oversaw the application of the collection policies and procedures used by HAM and HDF and their employees and agents, (d) drafted, created, approved or ratified the tactics and scripts used by HAM, HDF and CFG and their employees and agents to collect debts from

consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Couch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by HAM, HDF and CFG and their employees and agents in connection with their common efforts to collect consumer debts, (f) had knowledge of, approved, participated in, or ratified the unlawful debt collection practices used by HAM, HDF and CFG and their employees and agents in attempts to collect an alleged debt from Ms. Couch as alleged in this complaint, and (g) benefitted financially from the unlawful debt collection practices and procedures used by HAM, HDF and CFG and their employees and agents in connection with their common efforts to collect consumer debts.

58. Mr. Shaevel directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Couch that are described in this complaint.

59. It is the business practice of HAM, HDF and Mr. Shaevel, for pecuniary gain, to sell or otherwise disclose consumers' personal financial information to con men and criminals throughout the United States. In many instances, HAM, HDF and Mr. Shaevel knew, or should have known, that the recipients of the information intend to use the information to extort money from consumers using the unlawful debt collection practices that are described in this complaint. The non-public personal information peddled by HAM, HDF and Mr. Shaevel typically includes the consumer's full name, date of birth, social security number, residential address, telephone numbers, place of employment, banking information (including account numbers), and names of relatives and other personal references. HAM, HDF and Mr. Shaevel do not perform any reasonably investigation of the persons to whom they sell or otherwise disclose the consumer information.

60.     HAM, HDF and Mr. Shaevel regularly sell or otherwise disclose to third parties, non-public personal information regarding consumers that has been stolen, without conducting a reasonable investigation to determine whether the information has been stolen.

61.     HAM, HDF and Mr. Shaevel sold or otherwise disclosed to third parties, non-public personal information regarding Ms. Couch that had been stolen, without conducting a reasonable investigation to determine whether the information has been stolen. HAM, HDF and Mr. Shaevel knew or should have known that the non-public personal information regarding Ms. Couch that they sold or otherwise disclosed to third parties was stolen.

62.     According to Mr. Guzman, Mr. Purizhansky on behalf of HAM retained Mr. Guzman to set up and staff at least three call centers in Florida for the purpose of contacting consumers to collect delinquent accounts in which HDF and its investors had retained an interest in the money to be collected. Those call centers include CFG and MBG.

63.     All defendants are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

64.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th

Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL
1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

65.     A shareholder, owner, officer, member, manager, employee or agent of a
corporate debt collector can be held liable for violating the FDCPA, without piercing the
corporate veil, by being directly involved in the day-to-day operation of the company, including
the training and managing of employees, reviewing or supervising the review of accounts,
materially participating in the activities of the company, supervising collection activities,
overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for
the reason that each such individual is himself a "debt collector" within the statutory definition,
namely, each is a "person" in a business, "the principal purpose of which is the collection of any
debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or
asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of
Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth
Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.     Facts**

66.     On or about March 16, 2012, plaintiff Jacki Crouch allegedly borrowed $500.00
from an entity named WTJ Capital LLC ("WTJ"), in what is commonly known as a "payday
loan." Ms. Crouch borrowed the money at an annual percentage rate that exceeded three-hundred
and fifty percent. Any money borrowed by Ms. Crouch was used by Ms. Crouch to purchase
goods or services for personal, family and household purposes.

67.     Ms. Crouch allegedly failed to repay the debt and the account allegedly became
delinquent.

68.     Ms. Crouch expressly denies owing any money to any entity in connection with the account. Ms. Crouch expressly refuses to pay any money to any entity in connection with the account.

69.     On or about August 12, 2012, WTJ charged off the account. Sometime thereafter, WTJ sold the account along with Ms. Crouch's personal and financial information.

70.     Sometime prior to April 27, 2016, defendant Hylan Debt Fund, LLC on behalf of itself and its investors purchased Ms. Crouch's delinquent WTJ account and included the account in Hylan Debt Fund, LLC – Portfolio Series 109.  HDF and defendant Hylan Asset Management, LLC. HDF and HAM designated Ms. Crouch's WTJ account as Account No. HAM5200745. HDF and HAM also bundled Ms. Crouch's WTJ account with other accounts belonging to Ms. Crouch and designated the bundled accounts as Account No. HDF10513305.

71.     By Receivables Purchase and Sale Agreement, effective April 27, 2016, HDF and HAM claim to have "sold" Ms. Crouch's WTJ account to an entity named KSB International LTD ("KSB"), a limited liability company established under the laws of Malta, with an address at 85 St. John Street, Valletta, Malta. However, the agreement was not a true sale and was more in the nature of a joint venture agreement. For example, under the agreement, HDF retained the right to receive on a weekly basis, ten percent (net call center commissions) of all money collected by KSB and its agents on the accounts. Similarly, if KSB resold any of the accounts, ten percent of the sales proceeds would be paid to HDF. Thus, KSB and the call centers hired by KSB to collect the accounts would act as agents for the benefit of HDF and HAM. A copy of the Receivables Purchase and Sale Agreement is attached hereto as Exhibit E.

72.     KSB has one or more related entities in the United States that are responsible for

placing the accounts for collection with call centers. Ms. Crouch intends to name those KSB related entities as additional defendants in this lawsuit once their identities become known. Although HDF, HAM and Mr. Shaevel claim to know the identities of the KSB related entities, they have refused to provide that information to Plaintiff's counsel so that the entities could be named as defendants in this initial complaint.

73.     In or about December of 2016, KSB or a related entity placed Ms. Crouch's WTJ account for collection with defendant Cobalt Financial Group, LLC.

74.     On February 10, 2017, at approximately 11:50 a.m., CFG and its employees and agents placed a call to a cellular telephone belonging to Ms. Crouch's husband, Mark Crouch, and left the following computer-generated message for Ms. Crouch on Mr. Crouch's voice mail: "Hello, this message is intended for Crouch Jacki. We are calling in regards to a transaction involving your personal banking information. If you are Crouch Jacki please press 1 now, or hold for message. If you are still listening to this message, you acknowledge that you are Crouch Jacki. Please contact us at your earliest convenience regarding file number 124244. The number you can use to reach us is 1-800-564-9895. Make sure you ask to speak with Mr. Pritchard. Thank You."

75.     On February 14, 2017, Mr. Crouch on behalf of Jacki Crouch made a return call to telephone number 800-564-9895. The call was answered by a pre-recorded greeting with the words: "Thank you for calling Cobalt Financial Group." The call was transferred to defendants' employee and agent who identified herself as "Amy Johnson" with "CFG Financial." In the ensuing conversation, defendants' employee and agent made the following representations to Mr. Crouch regarding Ms. Crouch:

26

a)  Ms. Crouch's "Case Number" is 124244.

b)  "We have allegations here that are pending under her name and social security number and the original client is looking to take her to court."

c)  "I do have our preliminary report here which is stating the two allegations. I do have to assure you that this call is being recorded for quality assurance. Now, it says here, failure to confirm federal tax code regulations, basically defrauding a financial institution by the name of WTJ Capital LLC. That on the date when this was transpired, it says here March of 2012, and it was charged off August of 2012. And according to the documents, several attempts have been exhausted to notify her of a multitude of collection cycles, and due to the attempt, they have now listed her evasive and noncompliant. They are currently looking to serve her either at her home or place of employment. We do have the rights to put a cease and desist on the summons if this was something she would like to take care of voluntarily. By all means she can dispute this and it's in a three week viafication [sic] hearing in court. By law, they have to give her a chance to rectify this bad check, before it is received into a formal setting. . . .  Now as I stated, by law they must give her a chance to rectify this bad check before it is received into a formal setting. Or she can go ahead and dispute this and attend the viafication [sic] hearing in court. This is a mediation firm, just simply here to gather the statement on how she wishes to take care of these documents here."

d)      I don't have the original account number, but "I can check with the

attorney."

e)      The current balance owed is $600.00, "but if this is a matter she'd like to

take to court, attaching court fees, litigation fees, and the 29.9% MPR and

APR balance rates, it will be a total of $1,616.32."

f)      "Now, as far as pulling this stuff out of litigation, she would have to pull

something on a tangible bond in order to put the halt on the process. Now,

I can set you on a payment arrangement. What can you post down this

month toward the balance of $600.00, Mr. Crouch?"

g)      "Our offices close at Eastern Standard Time today at 5:00 o'clock. But, in

order to put this cease and desist on the summons, you will have to get

back to me in order to take care of this so she can be pulled out of

litigation."

h)      "I do have to assure you Mr. Crouch, we will have to get into contact with

you in regards to this within 24 hours or the halt will no longer be

available. I just notated it to the attorney that we're going to put a halt on

this for the callback okay? actually like several different attorneys that are

handling her case."

76.      On February 14, 2017, Mr. Crouch made another call to telephone number 800-

564-9895 for the purpose of identifying the entities that had made the above-described threats in

their efforts to coerce the payment of money from Ms. Crouch in connection with the alleged

debt. The call was answered by a pre-recorded greeting with the words: "Thank you for calling

28

Cobalt Financial Group." The call was transferred to defendants' employee and agent who

identified himself as "Jordan Scott" with "CFG Financial." In the ensuing conversation,

defendants' employee and agent stated "we do have some legal documents here attached to "Ms.

Crouch's] name and social. These legal documents are from Kent County." Mr. Crouch was then

transferred to defendants' employee and agent who stated that her name was "Amy Johnson."

Mr. Crouch stated that he was willing to make periodic payments of $100.00 each toward Ms.

Crouch's alleged debt. In the ensuing conversation, defendants' employee and agent made the

following representations to Mr. Crouch:

    a)   "Please hold so I can see if I can get this approved by my attorney, okay?"

    b)   "What we do is send you a paid in full documentation stating that you are
         pulled out of litigation and then by law what we will have to do is update
         all three credit bureaus that will update on your credit report and that will
         also qualify you for you to take out another loan for a bigger amount."

    c)   The payments will be processed by Cobalt Financial Group. "It will be
         done by us, the mediation firm here, sir."

Mr. Crouch was then transferred to defendants' employee and agent who stated that her name

was "Eva Hickman." In the ensuing conversation, defendants' employee and agent stated to Mr.

Crouch: "I'm going to put you on a federally recorded line for your protection as well as ours."

For the continued purpose of identifying the entities that were demanding the payment of money

from Ms. Crouch, Mr. Crouch paid $100.00 to defendants by debit card from an account with

Chase Bank. According to Chase Bank, the payment was processed by defendants as a "POS

DEBIT" transaction, and the actual payment processor was defendant Secured Billing Services,

LLC, located in "New York," with a contact telephone number of "888-608-6471."

77.     On February 14, 2017, defendants sent an email from info@cobaltgllc.com to Ms. Crouch regarding the account. Attached to the email was a letter dated February 14, 2017, on the letterhead of CFG, and bearing the electronic signature of "Michael Moore, Director of Operations." However, metadata shows that the letter was authored by defendant Marco D. McKithen. A copy of the email and letter are attached as Exhibit F.

78.     In February of 2017, defendants Secured Billing Services, LLC and Ronald C. Serio received actual notice of the allegations made by Ms. Crouch in this complaint. Upon information and belief, SBS and Mr. Serio have nonetheless continued to process payments for the other defendants named in this lawsuit.

79.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to extort the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

80.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

81.     Defendants and their employees and agents falsely represented the amount of Ms. Crouch's alleged debt.

82.     Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

83.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

84.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

85.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Crouch to collect the alleged debt.

86.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Crouch to collect the alleged debt.

87.     Defendants and their employees and agents falsely represented and falsely implied that they are a mediation firm.

88.     Defendants and their employees and agents falsely represented and falsely implied that they would be coming to Ms. Crouch's residence.

89.     Defendants and their employees and agents falsely represented and falsely implied that they would be coming to Ms. Crouch's place of employment.

90.     Defendants and their employees and agents falsely represented and falsely implied that there were two pending claims against Ms. Crouch, one for writing a "bad check" and another for intent to defraud a lending institution.

91.     Defendants and their employees and agents falsely represented and falsely implied that there were criminal charges pending against Ms. Crouch, one for writing a "bad check" and another for intent to defraud a lending institution.

92.     Defendants and their employees and agents falsely represented and falsely implied that a time and date had already been set for Ms. Crouch to appear in court.

93.    Defendants and their employees and agents falsely represented and falsely implied that they were working for the group of attorneys that were suing Ms. Crouch.

94.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Crouch's account was owned by a group of attorneys.

95.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed against Ms. Crouch in Kent County, Michigan.

96.    Defendants did not intend to file a lawsuit against Ms. Crouch in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

97.    Defendants and their employees and agents falsely represented and falsely implied that they had or would be affecting Ms. Crouch's credit by furnishing information regarding the account to the three major consumer reporting agencies.

98.    Defendants and their employees attempted to collect from Ms. Crouch a debt that Ms. Crouch does not owe.

99.    Defendants and their employees attempted to collect from Ms. Crouch a debt that defendants and their employees and agents have no legal right to collect.

100.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

101.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

102.    The FDCPA states that it is unlawful for a debt collector to place a telephone call

without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

103.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

104.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

105.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

106.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

107.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

108.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

109.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to

become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

110.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

111.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

112.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

113.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

114.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

115.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

116.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

117.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

118.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

119.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Crouch had committed a crime. Ms. Crouch did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

120.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

121.    Defendants and their employees and agents attempted to criminally extort money from Ms. Crouch and violated M.C.L. § 750.213.

122.    Defendants and their employees and agents failed to timely send to Ms. Crouch a notice containing the information required by 15 U.S.C. § 1692g(a).

123.     In connection with efforts to collect an alleged debt from Ms. Crouch, defendants obtained personal information regarding Ms. Crouch from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

124.     Alternatively, in connection with efforts to collect an alleged debt from Ms. Crouch, defendants obtained personal information regarding Ms. Crouch from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

125.     The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

126.     The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

127.    The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

128.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person
knowingly to obtain or disclose personal information, from a motor vehicle
record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false
 representation to obtain any personal information from an individual's motor
vehicle record.

18 U.S.C. § 2722.

129.    The DPPA also states:

"personal information" means information that identifies an individual, including
an individual's photograph, social security number, driver identification number,
name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

130.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a
motor vehicle record, for a purpose not permitted under this chapter, shall be
liable to the individual to whom the information pertains, who may bring a civil
action in a United States district court.

18 U.S.C. § 2724(a).

131.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

132.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Ms. Crouch.

133.    Defendants used Accurint or TLO to obtain, disclose or use personal information

regarding Ms. Crouch.

134.    Defendants made a false representation to Accurint or TLO to obtain personal information regarding Ms. Crouch that was derived from Ms. Crouch's motor vehicle record.

135.    Alternatively, the entity that obtained Ms. Crouch's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Ms. Crouch that was derived from Ms. Crouch's motor vehicle record.

136.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

137.    Defendants knowingly obtained, disclosed and used Ms. Crouch's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

138.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Ms. Crouch's personal information obtained from Accurint or TLO.

139.    No defendant had Ms. Crouch's consent, permission, authorization or waiver to obtain Ms. Crouch's personal information from Accurint or TLO.

140.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

141.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

142.    Each defendant and each defendant's employees, managers, owners, agents,

affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

143.   Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

144.   The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

145.   Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

146.   As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

V.   **Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

147.   Plaintiff incorporates the foregoing paragraphs by reference.

148.   Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural0 consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

149.    Plaintiff incorporates the foregoing paragraphs by reference.

150.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

    c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

    d)      An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

    e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

    f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

    g)      An order requiring defendants to provide plaintiff with the original of all documents pursuant to which defendants obtained plaintiff's stolen account information, so that plaintiff may take steps to determine the identity of all entities that have had possession of her stolen account information and thereby enable plaintiff to pursue those entities in efforts to protect plaintiff's credit identify from being further compromised and harmed.

### Count 3 – Michigan Regulation of Collection Practices Act

151.    Plaintiff incorporates the foregoing paragraphs by reference.

152.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

    a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

    b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

41

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

153.    Plaintiff incorporates the foregoing paragraphs by reference.

154.    Each defendant has violated the MOC.  Each defendant's violations of the MOC

include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)    Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)    Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)    Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)    Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 339.916;

b)    Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 5 – Invasion of Privacy

155.    Plaintiff incorporates the foregoing paragraphs by reference.

156.    Defendants' acts and omissions were undertaken willfully, maliciously, intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

157.    Defendants' acts and omissions were extreme and outrageous.

158.    Defendants' acts and omissions have caused plaintiff's personal and financial information to be peddled around the country to con men and criminals, exposing plaintiff to repeated and future harm, credit identity theft, and other invasions of his privacy.

159.    As an actual and proximate result of defendants' invasion of plaintiff's right to privacy, plaintiff has suffered, and will continue to suffer, actual damages for which she should be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

a)      Actual damages;

b)      Exemplary damages;

c)      Equitable relief, including an injunction, enjoining defendants from communicating plaintiff's personal information to any entity;

d)      Costs and reasonable attorney's fees; and

e)      Such further relief as the court deems just and proper.

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: March 18, 2017

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com